**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| DURACHEM GROUP, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> 3V SIGMA USA, INC., ) <br> ) <br> Defendant. ) <br> _____) | No. 2:20-cv-04181-DCN <br><br> **ORDER** |

The following matter is before the court on plaintiff Durachem Group Inc.'s ("Durachem") motion to compel, ECF No. 30. For the reasons set forth below, the court grants in part and denies in part the motion.

## I. BACKGROUND

This case concerns an alleged breach of contract by defendant 3V Sigma USA Inc. ("3V") for the sale of carbomer, which is a thickening agent essential to the manufacture of hand sanitizer.[1] In April 2020, 3V—a manufacturer of industrial products including carbomer—contracted to sell to Durachem—a distributor of industrial products—an initial 100,000 pounds of carbomer in 10,000-pound installments. The term of the contract was for one year, with automatic renewals thereafter. Durachem subsequently obtained standing orders from third parties to sell the carbomer it obtained from 3V.

---

[1] Unless otherwise noted, the factual allegations in this background section are derived from both the complaint and a copy of the contract at issue that the parties provided the court by email on March 31, 2022, ECF No. 42.

1

Due to a dramatic increase in use of and demand for hand sanitizer after the start of the COVID-19 pandemic, 3V was inundated with orders for its carbomer. While Durachem had specifically requested and contracted for a carbomer known as "Polygel HG," when 3V was unable to timely provide Durachem with that product, the parties discussed substituting other thickening agents, potentially at a lower price.[2] In May 2020, after delivering just under 10,000 pounds of carbomer to Durachem, 3V voided the contract, claiming Durachem had misrepresented its role as a mere distributor rather than a hand-sanitizer manufacturer. Durachem denies making any representation about its intended use of the carbomer and denies that the contract between Durachem and 3V was contingent upon such a representation.[3] As a result of 3V terminating the contract, Durachem canceled the orders from third parties to buy the carbomer it received from 3V.

Durachem filed the instant action against 3V on December 2, 2020, alleging causes of action for breach of contract, breach of contract accompanied by a fraudulent act, and violation of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10 et seq. ECF No. 1, Compl. Durachem alleges actual, consequential, and special damages as a result of 3V's breaches of contract in the form of lost profits of approximately $3,000,000.00 for the one-year contract term. Durachem further alleges actual, consequential, and special damages resulting from injury to Durachem's corporate

---

[2] Although Durachem discusses these events in connection with its motion to compel, the complaint does not allege any discussions between the parties regarding substitution of the Polygel HG carbomer.

[3] While the complaint generally alleges that 3V based its decision to void the contract on a false claim that Durachem made certain misrepresentations, the court deduces the specifics of that claim of misrepresentation from the parties' briefings on the motion to compel.

goodwill, credibility, and business reputation among its customers and potential customers.

On March 1, 2022, Durachem filed the instant motion to compel. ECF No. 30. On March 15, 2022, 3V responded in opposition, ECF No. 34, and on March 22, 2022, Durachem replied, ECF No. 36. As such, the motion has been fully briefed and is now ripe for the court's review.

## II.  STANDARD

Federal Rule of Civil Procedure 26 provides that, unless otherwise limited by court order,

> [p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden of expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Rather, information is relevant and discoverable if it relates to "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). "The scope and conduct of discovery are within the sound discretion of the district court." Columbus–Am. Discovery Grp. v. Atl. Mut. Ins. Co., 56 F.3d 556, 568 n.16 (4th Cir. 1995) (citing Erdmann v. Preferred Rsch., Inc. of Ga., 852 F.2d 788, 792 (4th Cir. 1988)); see also U.S. ex rel. Becker v. Westinghouse Savannah River Co., 305 F.3d 284,

290 (4th Cir. 2002) (stating that district courts are afforded "substantial discretion . . . in managing discovery").

If a party declines to comply with a discovery request, the serving party "may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B).  An evasive or incomplete disclosure, answer, or response "must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4). District courts have "wide latitude in controlling discovery and [their] rulings will not be overturned absent a showing of clear abuse of discretion." Ardrey v. United Parcel Serv., 798 F.2d 679, 683 (4th Cir. 1986); In re MI Windows & Doors, Inc. Prod. Liab. Litig., 2013 WL 268206, at *1 (D.S.C. Jan. 24, 2013).

### III.  DISCUSSION

In its fourth set of interrogatories, Durachem requested that 3V identify all of its sales of thickening agents used in hand sanitizers during the period from March 1, 2020 through the present, to include the date of sale, the purchaser, the sale price, the type of thickening agent, and the quantity of thickening agent.  In response, 3V produced the requested information (1) only through August 3, 2021; and (2) only as to the type of thickening agent that Durachem requested, Polygel HG.  3V objected to Durachem's request for information on carbomer products other than the one referenced in the contract and to Durachem's request for information dated after August of 2020, arguing that those requests are irrelevant, overly broad, and not proportional to the needs of the case.  Accordingly, Durachem brought the instant motion requesting that the court compel 3V to fully respond to its interrogatory.  The court addresses each category of requested information in turn.

### A. Time Period

First, Durachem requests that 3V supplement its response with sales information dated after August 2020 and up to present. Durachem explains that it "seeks to prove what its profit margins would have been over the course of the contract <u>and any additional terms</u>." ECF No. 30 at 4 (emphasis added). Specifically, Durachem argues that "[h]ad [3V] performed under the contract, it is probable that the relationship between [Durachem] and [3V] would have continued beyond the initial one-year term of the contract, given that [Durachem] contracted to buy carbomer at $6.50/pound, whereas [3V]'s average price to all other customers was substantially less." ECF No. 36 at 1. Therefore, Durachem claims to need information regarding 3V's sale of carbomer beyond August 2020 to show whether 3V's prices for carbomer increased, decreased, or stayed the same during the initial and potential subsequent terms of the contract. Any such fluctuation in pricing, Durachem contends, weighs on its lost profits calculation.

3V objects to expanding the time period of its response, arguing that the contractual relationship between the parties—including the pricing and carbomer product specified therein—governs Durachem's damages calculation. According to 3V, Durachem's interrogatory not only exceeds the time period of the parties' actual relationship—between April 16, 2020 and May 29, 2020—but also goes beyond the initial term of the contract, which, had it continued, was only for one year—until April 16, 2021. 3V argues that the time period specified in Durachem's discovery request—which imposes a continuous duty on 3V to supplement its response until trial—is not necessary to calculate Durachem's damages, to the extent it is entitled to any.

The court agrees with 3V. In essence, Durachem purports to seek lost profits damages associated with the mere potential that the parties would have renewed the contract. In South Carolina, lost profits may be recovered in a breach of contract action. See Drews Co. v. Ledwith–Wolfe Assocs., 371 S.E.2d 532, 535–36 (S.C. 1988). However, "[t]he crucial requirement in lost profits determinations is that they be 'established with reasonable certainty, for recovery cannot be had for profits that are conjectural or speculative.'" Id. (quoting S.C. Fin. Corp. of Anderson v. W. Side Fin. Co., 113 S.E.2d 329, 336 (S.C. 1960)). "The proof must pass the realm of conjecture, speculation, or opinion not founded on facts, and must consist of actual facts from which a reasonably accurate conclusion regarding the cause and the amount of the loss can be logically and rationally drawn." Id. (quoting 22 Am. Jur. 2d Damages § 641 (1988)).

Durachem's argument is unconvincing for the simple reason that the parties did not renew the contract. Durachem cannot sue for damages on a possible future contract that was never formed. See, e.g., Hotel & Motel Holdings, LLC v. BJC Enters., LLC, 780 S.E.2d 263, 272 (S.C. Ct. App. 2015) ("The elements for a breach of contract are the existence of a contract, its breach, and damages caused by such breach.") (internal quotation marks omitted). Theoretically, the failure to renew could be a consequential injury caused by 3V's alleged breach of the contract. But, as alleged, that injury is entirely speculative and conjectural. See, e.g., Big Lots Stores, Inc. v. Giant of Md., LLC, 2008 WL 11367511, at *3 (D. Md. July 14, 2008) (rejecting the plaintiff's theory that "the court may ignore the speculation inherent in the assumptions that the company would have renewed the sublease three, ten, and twenty years in the future because [the defendant]'s breach created this speculation."). To conclude that a party

6

would have done precisely the opposite of what it actually did—in this case, renew a contract that it terminated early—is to engage in inherently speculative and imaginary thinking. Under basic principles of lost profits damages and based on the facts alleged, Durachem cannot show that the failure to renew flowed from 3V's breaches. Durachem provides no case law support for its damages theory. On the contrary, Fourth Circuit precedent suggests that lost profits damages are unavailable based on Durachem's mere speculation that the parties would have ultimately renewed the contract.

In Call Carl, Inc. v. BP Oil Corp., plaintiffs were service station owners who were notified that their franchise agreements were not going to be renewed, an action that was provided for in their contracts. 554 F.2d 623, 630 (4th Cir. 1977). The service station owners sued for breach of contract and fraudulent misrepresentation claiming that BP had assured them that their franchise agreements would continue. The service station owners claimed they were entitled to damages for lost profits that they would have received from the defendants if the defendants had renewed the plaintiffs' contracts. The Fourth Circuit rejected that claim, observing that each plaintiff "knew that his franchise agreement was by its provisions of limited duration and expressly non-renewable by either party on thirty days' notice." Id. The Fourth Circuit held that the plaintiffs could not recover for expected profits in the event of renewal, explaining that "damages for loss of an expectancy of profits created by prior or contemporaneous oral representations plainly contradictory with the terms of a written contract we believe to be non-recoverable if written contracts are to retain significance." Id.

Here, the parties agree that the contract on its face provided for a limited one-year term, with only the possibility of renewal. The contract specifically provides that either

7

party may prevent renewal upon at least sixty days written notice to the other party prior to the expiration of the initial term. Like the plaintiffs in Call Carl, Durachem may not claim damages for loss of an expectancy of profits that contradicts the terms of the written contract. Durachem's argument for lost profits damages associated with future renewals of the contract is even less compelling than that of the plaintiffs in Call Carl because Durachem does not allege—in its complaint or in its motion—that 3V made any representations assuring Durachem that the contract would be renewed beyond the initial term. Because Durachem has provided no reason for the court to believe that it could recover lost profits damages based on the mere potential that the parties would have renewed the contract at issue, Durachem has failed to show that the information for the time period requested is relevant and not overly broad. 3V's response to Durachem's interrogatory with information through August 3, 2021 covers the entirety of the initial term of the contract and then some, and the court declines to compel 3V to provide information beyond that timeframe. The motion is denied in this respect.

### B. Sales of Other Carbomer Products

Next, Durachem requests that 3V respond with information on the sales of all—instead of just one—of its thickening agents. According to Durachem, when 3V could not deliver Polygel HG to Durachem as contracted, the parties discussed at length other carbomers that might be substituted. Moreover, Durachem contends that, given the high demand for Polygel HG during the early months of the COVID-19 pandemic, which was the preferred carbomer for hand-sanitizer manufacturers, it was likely that 3V would have needed to substitute a different carbomer to meet its contractual requirements. These alternative carbomers carried different prices and therefore different profit margins for

8

Durachem.  Thus, Durachem maintains that, to the extent 3V intends to argue that Durachem's claimed lost profits ought to be reduced because of the availability of other products and different profit margins regarding the same, the requested information is relevant, proportional, is not privileged, and should be produced.  As an alternative to compelling 3V to produce the requested information on product sales for substitutes, Durachem requests that the court prohibit 3V from making these arguments to reduce Durachem's damages at trial.

     3V objects to the production of sales information for alternative carbomers, arguing that at no time did the parties agree to substitute Polygel HG with any other product.  3V concedes that the parties did discuss such a substitution, but the contract was terminated prior to any agreement on the matter.  In any event, 3V argues that only the contract would govern such a hypothetical situation, and 3V quoted the price of only one substitute product, Rapidgel EZ1, to Durachem in the course of the parties' discussions prior to the termination of the contract.  In other words, 3V argues that the court should only consider the price for Polygel HG in the contract and the quoted price for the substitute product, Rapidgel EZ1, in calculating Durachem's damage—not the prices 3V charged other customers for substitute products.

     The court finds the sales information for 3V's other carbomer products relevant and discoverable.  Notably, although it was given the opportunity, 3V did not indicate whether it intended to argue that Durachem's damages calculation should be reduced based on the parties' discussions of substituting a different product for Polymer HG.  To the extent 3V intends to make such an argument, Durachem is entitled to discovery regarding 3V's sales of those substitute carbomers.  Because the parties agree that they

9

engaged in discussions regarding a substitution agreement, at this stage of litigation, the allegation that the parties would have agreed to substitute a different carbomer for Polygel HG during the one-year term of the contract is not too speculative or conjectural to preclude discovery on the matter. To be sure, either party may ultimately prove that a substitution agreement was not reasonably probable and therefore should not be considered in the damages calculation. Moreover, 3V may ultimately prove that the parties would have only agreed to one particular substitute, Rapidgel EZ1, at the price quoted, and that quoted price would govern the damages calculation for some period of the contract. However, at this early stage, neither fact has been established, and the sales information for 3V's other carbomer products remains relevant to the price and product that the parties may have agreed to in the event a substitution was necessary. Accordingly, 3V must either respond to Durachem's interrogatory with its sales information for other carbomer products or abandon any future argument that Durachem's damages should be reduced to reflect a substitution of Polygel HG with another product at some point during the contractual relationship.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS IN PART** and **DENIES IN PART** the motion to compel in accordance with this order.

10

**AND IT IS SO ORDERED.**

_[signature]_

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**April 5, 2022**
**Charleston, South Carolina**